**2021 IL 125124**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125124)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANTONIO HOUSE, Appellee.

*Opinion filed October 22, 2021.*

JUSTICE CARTER delivered the judgment of the court, with opinion.

Justices Garman, Theis, and Neville concurred in the judgment and opinion.

Chief Justice Anne M. Burke concurred in part and dissented in part, with opinion.

Justice Michael J. Burke concurred in part and dissented in part, with opinion, joined by Justice Overstreet.

**OPINION**

¶ 1       On November 28, 2018, this court issued a supervisory order directing the appellate court to vacate its judgment in *People v. House*, 2015 IL App (1st) 110580. We directed the appellate court to consider the effect of this court's opinion in *People v. Harris*, 2018 IL 121932, on the issue of whether petitioner's sentence violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). *People v. House*, No. 122134 (Ill. Nov. 28, 2018) (supervisory order).

¶ 2       Following the issuance of our supervisory order, the appellate court determined that petitioner's sentence was unconstitutional as applied under the proportionate penalties clause of the Illinois Constitution. The appellate court remanded the cause for a new sentencing hearing. 2019 IL App (1st) 110580-B.

¶ 3       The State appealed as a matter of right (Ill. S. Ct. R. 317, 612(b)(2) (eff. July 1, 2017)). We now reverse in part and vacate in part the appellate court's judgment and remand the cause to the circuit court for further postconviction proceedings.

¶ 4       BACKGROUND

¶ 5       Following a Cook County jury trial, petitioner was found guilty of two counts of first degree murder and two counts of aggravated kidnapping based on his participation in the 1993 abductions and shooting deaths of 15-year-old Stanton Burch and 18-year-old Michael Purham. Petitioner was allegedly among a group of men who kidnapped the victims after the victims attempted to sell drugs in an area where petitioner and his fellow gang members typically sold drugs. Petitioner was two months past his nineteenth birthday at the time of the crimes. The victims were driven to a vacant field, where they were shot and killed. Petitioner provided police with a handwritten statement attesting to his involvement in the crimes. He claimed that he had no idea of the larger plan when the victims were driven to the deserted location and that the victims were killed after he left. The circuit court sentenced petitioner to a mandatory natural life term for the murder convictions (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1992)) and 60 years for each aggravated kidnapping conviction, to run consecutively to the life term (see 720 ILCS 5/10-2(a)(3) (West 1992)).

¶ 6   Petitioner filed a direct appeal raising, *inter alia*, a claim that his consecutive and extended-term sentences violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The appellate court affirmed petitioner's convictions, vacated his aggravated kidnapping sentences, and remanded for resentencing. *People v. House*, 328 Ill. App. 3d 1088 (2001) (table) (unpublished order under Illinois Supreme Court Rule 23).[1] On remand, petitioner's sentence for the aggravated kidnapping convictions was reduced to consecutive 30-year terms.

¶ 7   While his direct appeal was pending, petitioner filed a *pro se* petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2008)), raising, *inter alia*, a claim that his mandatory natural life sentence violated the proportionate penalties provision of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) and a claim of actual innocence. The circuit court dismissed petitioner's postconviction petition, finding it lacked jurisdiction while petitioner's direct appeal remained pending. Petitioner appealed the dismissal, and the appellate court vacated the dismissal and remanded the case for second-stage postconviction proceedings on the State's confession of error. *People v. House*, No. 1-02-0346 (Feb. 5, 2003) (order).

¶ 8   On remand, petitioner's appointed counsel filed an amended postconviction petition raising five issues: (1) actual innocence based on a witness's recantation of her trial testimony; (2) his constitutional rights were violated based on newly discovered evidence of police misconduct; (3) the trial court erred in denying his postconviction counsel's request to obtain Office of Professional Standards files on the detectives involved in his interrogation; (4) his constitutional rights were violated based on ineffective assistance of trial and appellate counsel; and (5) his mandatory sentence of natural life violated the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). The circuit court granted the State's motion to dismiss the petition at the second stage of the postconviction proceedings.

---

[1]This Rule 23 order was subsequently vacated and withdrawn pursuant to a supervisory order entered by this court (*People v. House*, 199 Ill. 2d 567 (2002) (supervisory order)).

¶ 9 The appellate court affirmed the dismissal of petitioner's postconviction petition on the first four issues, vacated petitioner's sentence after finding that his mandatory natural life sentence violated the Illinois proportionate penalties provision as applied, and remanded for resentencing. *House*, 2015 IL App (1st) 110580. The appellate court reasoned that applying the mandatory natural life sentencing statute to petitioner violated the proportionate penalties provision because it precluded consideration of mitigating factors, specifically petitioner's age, level of culpability, and criminal history. *Id.* ¶ 89. Citing a newspaper opinion, a publication from an advocacy organization, and practices of some European countries, the appellate court found that the United States Supreme Court's "division between juvenile and adult at [age] 18" did not "create[ ] a bright line rule," the designation of age 18 as an adult "appear[ed] to be somewhat arbitrary," and the characteristics of juvenile offenders also applied to young adult offenders. *Id.* ¶¶ 94-96.

¶ 10 The appellate court concluded that petitioner's mandatory natural life sentence shocked the moral sense of the community. *Id.* ¶ 101. Accordingly, the appellate court vacated the sentence and remanded for resentencing. *Id.* ¶ 102. Because it found the mandatory natural life sentence unconstitutional as applied to petitioner under the proportionate penalties provision of the Illinois Constitution, the appellate court declined to address petitioner's remaining constitutional challenges, including those under the eighth amendment. *Id.* ¶ 103.

¶ 11 Both parties appealed. In November 2018, this court denied the State's petition for leave to appeal as a matter of right (Ill. S. Ct. Rs. 317, 612(b)(2) (eff. July 1, 2017)) and issued a supervisory order directing the appellate court to vacate its judgment and to reconsider the effect of this court's opinion in *Harris*, 2018 IL 121932, on the issue of whether petitioner's sentence violated the proportionate penalties clause of the Illinois Constitution. *House*, No. 122134 (Ill. Nov. 28, 2018) (supervisory order). This court also denied petitioner's petition for leave to appeal concerning the appellate court affirming the dismissal of his postconviction petition on the first four issues.

¶ 12 On remand, the parties filed an agreed motion for summary disposition asking the appellate court to remand the case "for further second-stage post-conviction proceedings, including compliance with [Illinois Supreme Court] Rule 651(c)."

The appellate court denied the agreed motion and again affirmed the dismissal of petitioner's postconviction petition on the first four issues, vacated petitioner's sentence based on its conclusion that his mandatory natural life sentence violated the proportionate penalties clause of the Illinois Constitution, and remanded for resentencing. 2019 IL App (1st) 110580-B.

¶ 13 The State appealed as a matter of right. Ill. S. Ct. Rs. 317, 612(b)(2) (eff. July 1, 2017). We allowed the Children and Family Justice Center; the Juvenile Law Center; the Center for Law, Brain and Behavior; the Civitas ChildLaw Clinic; the Criminal and Juvenile Justice Project; the Juvenile Justice Initiative of Illinois; the Chicago Lawyers' Committee for Civil Rights; and Marc Kadish to file a joint *amicus curiae* brief. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 14 ANALYSIS

¶ 15 The procedural history of this appeal began with the dismissal of petitioner's postconviction petition at the second stage of postconviction proceedings. The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)) provides a tool for criminal defendants to assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. *Id.* § 122-1(a); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to constitutional deprivations that occurred during the original trial. *Coleman*, 183 Ill. 2d at 380. "A proceeding brought under the [Act] is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment." *People v. Evans*, 186 Ill. 2d 83, 89 (1999). The purpose of a proceeding under the Act "is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001).

¶ 16 A postconviction proceeding contains three stages under the Act. During the first stage of the proceeding, the circuit court must independently review the postconviction petition, without input from the State, and determine whether it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2008); *People v. Johnson*, 2018 IL 122227, ¶ 14. The circuit court may summarily dismiss the petition if it meets that standard. *Johnson*, 2018 IL 122227, ¶ 14. If the

postconviction petition is not summarily dismissed at the first stage, the proceedings move to the second stage. 725 ILCS 5/122-2.1(b) (West 2008); *Johnson*, 2018 IL 122227, ¶ 14.

¶ 17        At the second stage of postconviction proceedings, counsel may be appointed to represent the petitioner (725 ILCS 5/122-4 (West 2008)), and the State may file responsive pleadings (*id.* § 122-5). *Johnson*, 2018 IL 122227, ¶ 15. The circuit court determines at this stage whether the postconviction petition and any accompanying documentation make a substantial showing of a constitutional violation. *Id.* "If no such showing is made, the petition is dismissed. If, however, the petition sets forth a substantial showing of a constitutional violation, it is advanced to the third stage, where the circuit court conducts an evidentiary hearing (725 ILCS 5/122-6 (West 2010))." *Id.*

¶ 18        The primary issue in this appeal involves a constitutional challenge to petitioner's mandatory natural life sentence for his murder convictions (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1992)). Statutes are presumed constitutional, and petitioner must overcome that presumption by clearly establishing that the mandatory sentencing statute at issue is invalid when applied to him. *People v. Coty*, 2020 IL 123972, ¶ 22; *People v. Rizzo*, 2016 IL 118599, ¶ 23. Petitioner's constitutional challenge is reviewed *de novo*. *Coty*, 2020 IL 123972, ¶ 22.

¶ 19        In its appeal, the State argues that the appellate court erroneously considered petitioner's as-applied proportionate penalties claim. Petitioner seeks cross-relief on the dismissal of his actual innocence claim. We first address the State's claim that the appellate court erred in ruling on petitioner's proportionate penalties claim and, thereafter, discuss petitioner's actual innocence claim.

¶ 20                    A. Proportionate Penalties Clause of the Illinois Constitution

¶ 21        This case comes to us for review following our court's issuance of a supervisory order directing the appellate court to vacate its judgment in *House*, 2015 IL App (1st) 110580. We specifically directed the appellate court to consider the effect of this court's opinion in *Harris*, 2018 IL 121932, on the issue of whether petitioner's sentence violated the proportionate penalties clause of the Illinois Constitution (Ill.

Const. 1970, art. I, § 11). *House*, No. 122134 (Ill. Nov. 28, 2018) (supervisory order).

¶ 22     Following the issuance of our supervisory order, on remand, the parties filed an agreed motion for summary disposition asking the appellate court to remand the case "for further second-stage post-conviction proceedings, including compliance with [Illinois Supreme Court] Rule 651(c)." The parties agreed that, based on *Harris*, 2018 IL 121932, and *People v. Thompson*, 2015 IL 118151, this case should be remanded for further postconviction proceedings to give petitioner the opportunity to consult with counsel about his constitutional claims and to develop and present evidence to the trial court, with assistance of counsel, demonstrating how the evolving science on juvenile maturity and brain development applies to an emerging adult and to the petitioner's specific circumstances.

¶ 23     The appellate court denied the parties' agreed motion and again affirmed the dismissal of petitioner's postconviction petition on the first four issues raised in the petition. The appellate court also again vacated petitioner's sentence based on its conclusion that his mandatory natural life sentence violated the proportionate penalties clause of the Illinois Constitution and remanded for resentencing. 2019 IL App (1st) 110580-B. The appellate court relied on the same reasoning as contained in its 2015 opinion and added that (1) recent legislative enactments supported its conclusion and (2) petitioner's sentence was disproportionate when compared to that of Fred Weatherspoon, who was a juvenile at the time of the offenses and had been resentenced under *Miller v. Alabama*, 567 U.S. 460 (2012). 2019 IL App (1st) 110580-B, ¶¶ 62, 76. The appellate court determined that *Harris*, 2018 IL 121932, had no effect on petitioner's claim because he raised it in a postconviction petition and was not the principal offender, adding that no further record development was necessary. 2019 IL App (1st) 110580-B, ¶ 32.

¶ 24     The State contends that, under *Harris*, 2018 IL 121932, and *Thompson*, 2015 IL 118151, the appellate court erroneously considered petitioner's as-applied constitutional claim under the Illinois proportionate penalties clause because the claim was not developed in the trial court. According to the State, " '[b]y definition, an as-applied constitutional challenge is dependent on the particular circumstances and facts of the individual defendant[.]' *Thompson*, 2015 IL 118151, ¶ 37." Thus, the State submits, it is " ' "paramount that the record be sufficiently developed in

terms of those facts and circumstances for purposes of appellate review." ' *Harris*, 2018 IL 121 932, ¶ 39 (citation omitted)."

¶ 25    Petitioner argues that the appellate court properly remanded the case for a new sentencing hearing. Contrary to his position in the agreed motion for summary disposition filed in the appellate court, petitioner now argues that no further record development is necessary to conclude that the mandatory life sentencing statute shocks the conscience as applied to him.

¶ 26    This court's supervisory order specifically directed the appellate court to consider the effect of this court's opinion in *Harris*, 2018 IL 121932, on the issue of whether petitioner's sentence violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). *House*, No. 122134 (Ill. Nov. 28, 2018) (supervisory order). Our analysis, thus, begins with reviewing our decision in *Harris*.

¶ 27    In *Harris*, this court recognized that "[t]he distinction between facial and as-applied constitutional challenges is critical." *Harris*, 2018 IL 121932, ¶ 38. When making a facial challenge, the challenging party "must establish that the statute is unconstitutional under any possible set of facts." *Id.* An as-applied challenge, on the other hand, requires the challenging party to establish "that the statute is unconstitutional as it applies to the specific facts and circumstances of the challenging party." *Id.* We explained that, by definition, as-applied constitutional challenges are dependent on the specific facts and circumstances of the challenging party and, " ' "[t]herefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." ' " *Id.* ¶ 39 (quoting *People ex rel. Hartrich v. 2010 Harley-Davidson*, 2018 IL 121636, ¶ 31, quoting *Thompson*, 2015 IL 118151, ¶ 37). We further explained and reiterated that

> " ' " '[a] court is not capable of making an "as applied" determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional "as applied" is premature.' " ' " *Id.* (quoting *Rizzo*, 2016 IL 118599, ¶ 26, quoting *People v. Mosley*, 2015 IL 115872, ¶ 47, quoting *In re Parentage of John M.*, 212 Ill. 2d 253, 268 (2004)).

¶ 28    In *Harris*, this court reversed the appellate court's judgment vacating defendant's sentences and remanding for resentencing based on its determination that, as applied to the defendant's circumstances, his sentence violated the proportionate penalties clause of the Illinois Constitution. *Id.* ¶ 63. We reasoned that, where the defendant did not raise his as-applied constitutional challenge in the trial court, an evidentiary hearing was not held on his claim, and the trial court did not make any findings of fact on the defendant's specific circumstances, the appellate court made its holding without a developed evidentiary record. *Id.* ¶ 40.

¶ 29    Here, as in *Harris*, petitioner did not provide or cite any evidence relating to how the evolving science on juvenile maturity and brain development applies to his specific facts and circumstances. As a result, no evidentiary hearing was held, and the trial court made no factual findings critical to determining whether the science concerning juvenile maturity and brain development applies equally to young adults, or to petitioner specifically, as he argued in the appellate court. Accordingly, as in *Harris*, the appellate court improperly found that petitioner's sentence violated the proportionate penalties clause of the Illinois Constitution without a developed evidentiary record on the as-applied constitutional challenge. Indeed, the appellate court's opinion equating young adult offenders to juvenile offenders relied on articles from a newspaper and an advocacy group. As the State points out, no trial court has made factual findings concerning the scientific research cited in the articles, the limits of that research, or the competing scientific research, let alone how that research applies to petitioner's characteristics and circumstances.

¶ 30    The appellate court, nonetheless, concluded that this court's reasoning in *Harris* and *Thompson* is limited to cases when a defendant raises an as-applied challenge on direct review or when the defendant is guilty as a principal rather than as an accomplice. We disagree.

¶ 31    In *Harris*, this court rejected the defendant's argument that *Thompson* does not apply because *Thompson* involved a collateral proceeding and *Harris* involved direct review. *Id.* ¶ 41. We explained that

    "[t]he critical point is not whether the claim is raised on collateral review or direct review, but whether the record has been developed sufficiently to address the defendant's constitutional claim. As we have emphasized, a reviewing court is not capable of making an as-applied finding of unconstitutionality in the

'factual vacuum' created by the absence of an evidentiary hearing and findings of fact by the trial court." *Id.*

Thus, our analysis in *Harris* focused on development of the record in the trial court, not whether the challenge is raised in a collateral proceeding or on appeal, or whether the petitioner was a principal rather than an accomplice in the crime. We conclude that the appellate court erroneously held that petitioner's sentence of natural life violated the proportionate penalties clause of the Illinois Constitution as applied to him without a developed evidentiary record or factual findings on the as-applied constitutional challenge.

¶ 32    Because we have determined that the record in this case requires further development, we remand the cause to the circuit court for second-stage postconviction proceedings.

¶ 33                        B. Petitioner's Request for Cross-Relief

¶ 34    Petitioner also requests cross-relief, arguing that he has made a substantial showing of actual innocence based on newly discovered evidence. According to petitioner, this newly discovered evidence supports his claim of actual innocence, as it shows that he was not present when the victims were kidnapped or killed.

¶ 35    In addition to his as-applied constitutional claim, petitioner's amended postconviction petition alleged, *inter alia*, a claim for actual innocence. The claim was supported with an affidavit from Eunice Clark, a key state witness, recanting her trial testimony. The trial court dismissed petitioner's postconviction petition at the second stage of the postconviction proceedings. In 2015, the appellate court affirmed the dismissal of four of petitioner's claims, including his actual innocence claim, but granted postconviction relief on petitioner's as-applied challenge to the mandatory natural life sentencing statute. Petitioner filed a petition for leave to appeal asking this court to review the dismissal of his other claims, including the second-stage dismissal of his actual innocence claim, and the State sought review of the appellate court's judgment that petitioner's mandatory natural life sentence was unconstitutional. This court denied both petitioner's and the State's petitions for leave to appeal, but we issued a supervisory order directing the appellate court

to vacate its judgment and consider the effect of *Harris* on petitioner's sentencing claim.

¶ 36　　On remand, the appellate court again granted postconviction relief on petitioner's as-applied constitutional claim. The appellate court did not revisit its prior judgment affirming the dismissal of petitioner's claim of actual innocence. Petitioner now asks this court for cross-relief on his actual innocence claim. He asks this court to vacate the appellate court's judgment as to his actual innocence claim and remand to the appellate court for reconsideration of that claim in light of *People v. Robinson*, 2020 IL 123849, or alternatively to remand for a third-stage evidentiary hearing.

¶ 37　　Before the State filed its opening brief in this appeal, this court decided *Robinson*. *Robinson* clarified the standards that apply when reviewing actual innocence claims at the leave-to-file stage for successive postconviction petitions (see *id.* ¶¶ 57-62) and explained aspects of the standards that generally apply to review of such claims at any stage (see *id.* ¶¶ 55-56).

¶ 38　　The State agrees in part with petitioner, conceding that the cause should be remanded to the trial court. The State agrees that this court may review all matters that were properly raised and passed on in the course of litigation, even if the court previously denied the petitioner's petition for leave to appeal that raised the issue. See *Relph v. Board of Education of DePue Unit School District No. 103*, 84 Ill. 2d 436, 442-43 (1981).

¶ 39　　According to the State, not only did the appellate court issue its initial decision prior to *Robinson* but also prior to *People v. Sanders*, 2016 IL 118123, which reviewed the second-stage dismissal of an actual innocence claim premised, like petitioner's, on recantation. Thus, the courts below did not have the benefit of *Robinson* or *Sanders* in considering Clark's recantation, and the appellate court's judgment rests in part on aspects of the actual innocence standard that *Robinson* has since clarified. In light of the intervening decisions, the State agrees that vacatur of the appellate court's judgment relating to actual innocence and remand for reconsideration of that claim is warranted. The State asks that, to avoid piecemeal litigation, the court vacate that part of the appellate court's judgment affirming the trial court's second-stage dismissal of petitioner's actual innocence claim and

remand to the trial court to reconsider that claim at the second stage in light of *Sanders* and *Robinson*.

¶ 40     Petitioner counters that, because the State concedes that his actual innocence claim was wrongly dismissed, the claim should proceed to a third-stage evidentiary hearing and that it would be unfair to remand for second-stage proceedings. We are not persuaded by petitioner's suggestion.

¶ 41     Here, the trial court dismissed petitioner's postconviction petition at the second stage of the proceedings after determining that petitioner's petition and accompanying documentation failed to make a substantial showing of a constitutional violation. We disagree with petitioner's suggestion that the cause should be remanded to the trial court for third-stage postconviction proceedings because there was no prior determination that petitioner made a substantial showing on his actual innocence claim. The trial court did not have the benefit of this court's decisions in *Sanders* and *Robinson*, and to avoid piecemeal litigation, we now vacate that portion of the appellate court's judgment affirming the trial court's second-stage dismissal of petitioner's actual innocence claim and remand the cause to the trial court to reconsider that claim in second-stage postconviction proceedings in light of *Sanders* and *Robinson*. We make no judgment on the merits of petitioner's actual innocence claim.

¶ 42                                CONCLUSION

¶ 43     For the foregoing reasons, we reverse the appellate court's holding that petitioner's sentence violated the proportionate penalties clause of the Illinois Constitution as applied to petitioner. We also vacate the appellate court's holding affirming the dismissal of petitioner's actual innocence claim. We remand the cause to the trial court for further second-stage postconviction proceedings consistent with this opinion.

¶ 44     Appellate court judgment reversed in part and vacated in part.

¶ 45     Cause remanded.

¶ 46    CHIEF JUSTICE ANNE M. BURKE, concurring in part and dissenting in part:

¶ 47    I agree with the portion of the majority opinion that remands this cause to the circuit court for further consideration of petitioner's postconviction claim of actual innocence. I disagree, however, with the majority's decision to remand this cause to consider whether petitioner's natural life sentence violates the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11). In my view, remanding on the latter issue is at odds with *People v. Harris*, 2018 IL 121932. I therefore concur in part and dissent in part.

¶ 48    Petitioner was convicted, *inter alia*, of two counts of first degree murder arising from his participation in the shooting deaths of two victims, Stanton Burch and Michael Purham. Petitioner received a mandatory natural life sentence for the convictions pursuant to section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998)). This provision now states that, for first degree murder, "the court shall sentence the defendant to a term of natural life imprisonment if the defendant, at the time of the commission of the murder, had attained the age of 18, and *** is found guilty of murdering more than one victim." 730 ILCS 5/5-8-1(a)(1)(c) (West 2020). Petitioner was 19 years old at the time he committed the murders and, thus, fell within the terms of the statute.

¶ 49    Petitioner's murder convictions were affirmed on direct appeal. *People v. House*, 328 Ill. App. 3d 1088 (2001) (table) (unpublished order under Illinois Supreme Court Rule 23). He thereafter filed a postconviction petition that, among other claims, asserted that his mandatory natural life sentence violated the proportionate penalties clause of the Illinois Constitution. The petition was dismissed at the second stage of postconviction proceedings. On appeal, the appellate court agreed with petitioner that the proportionate penalties clause prohibits his mandatory natural life sentence. The court therefore vacated petitioner's sentence and remanded for a new sentencing hearing. 2018 IL App (1st) 110580-B. This appeal followed.

¶ 50    Before this court, petitioner repeats his claim that his mandatory sentence of natural life in prison violates the proportionate penalties clause. Petitioner's claim rests largely on the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012). In that case, the Supreme Court held that, because of the characteristics of youth, the eighth amendment "forbids a sentencing scheme that

mandates life in prison without possibility of parole" for defendants who were under the age of 18 at the time the crimes were committed. *Id.* at 479. *Miller* did not categorically prohibit natural life sentences without possibility of parole for juvenile offenders. Rather, the Court held only that the eighth amendment requires "that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing" that penalty. *Id.* at 483.

¶ 51    Petitioner contends that, under the proportionate penalties clause, the rule announced in *Miller* should be extended to adult offenders between the ages of 18 and 21 in Illinois. In support of this contention, petitioner asserts that "there has been endorsement within the scientific community" of research showing "that the brains of young adults continue to develop into their mid-20s." Further, according to petitioner, "scientific advances in brain research" demonstrate that the characteristics of juvenile offenders, such as immaturity and poor impulse control, exist equally in adult offenders between the ages of 18 and 21. Thus, petitioner maintains that, just as the Supreme Court held in *Miller* that the eighth amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole" for juvenile offenders, this court should hold that the proportionate penalties clause forbids a sentencing scheme that mandates life in prison without possibility of parole for adult offenders between the ages of 18 and 21.

¶ 52    The majority declines to reach the merits of petitioner's argument. Citing *Harris*, the majority concludes that petitioner's proportionate penalties clause argument based on extending *Miller* is an as-applied challenge to the constitutionality of his sentence. Noting the rule that an as-applied constitutional challenge requires the development of an adequate factual record, the majority finds that one is lacking here. The majority observes that no evidentiary hearing was held in the circuit court and that petitioner did not provide any evidence to the court relating to brain development and research. As a result, the circuit court made no factual findings as to whether the science concerning juvenile maturity and brain development applies equally to adult offenders between the ages of 18 and 21. Accordingly, the majority holds that the appellate court improperly found that petitioner's sentence violated the proportionate penalties clause in the absence of a sufficient evidentiary record. The majority concludes that the cause must be remanded to the circuit court for second-stage postconviction proceedings and the development of an adequate record. I disagree.

¶ 53    I wrote separately in *Harris*. There, I noted that a proportionate penalties clause challenge based on *Miller* is a facial challenge, not an as-applied one. *Harris*, 2018 IL 121932, ¶¶ 65-76 (Burke, J., specially concurring). I continue to believe this is true. Here, as in *Harris*, petitioner's primary objection is that, pursuant to the statutory scheme enacted by the legislature in section 5-8-1(a)(1)(c)(ii), the sentencing court was precluded from considering any potentially mitigating circumstances when imposing sentence on petitioner. This is constitutionally impermissible, according to petitioner, because adult offenders between the ages of 18 and 21 are essentially no different than juvenile offenders and, therefore, cannot be subject to mandatory natural life sentences. Stated otherwise, the constitutional flaw alleged by petitioner is that section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections requires a mandatory life sentence for defendants who have "attained the age of 18," when it should read "attained the age of 21." The alleged constitutional flaw is—quite literally—apparent on the face of the statute. Petitioner's proportionate penalties clause argument based on *Miller* is clearly a facial challenge. See *e.g.*, *People v. One 1998 GMC*, 2011 IL 110236, ¶ 86 (Karmeier, J., specially concurring) (a facial challenge is one in which the constitutional flaw is inherent "in the terms of the statute itself").

¶ 54    Moreover, any question as to whether a constitutional challenge based on *Miller* is a facial challenge is eliminated by the Supreme Court's recent decision in *Jones v. Mississippi*, 593 U.S. ___, 141 S. Ct. 1307 (2021). There, the Court expressly noted that a constitutional challenge to a natural life sentence without possibility of parole imposed under a *discretionary* sentencing scheme—that is, a scheme where the sentencing court has the discretion to consider factual circumstances and *not* impose a natural life sentence—is an "as-applied" challenge to the sentencing court's decision. *Id.* at ___, 141 S. Ct. at 1322. In contrast, a constitutional challenge brought to a *mandatory* sentencing scheme created by the legislature, such as the one at issue here, is a facial challenge.

¶ 55    Because petitioner's constitutional challenge is facial, the rule relied upon by the majority for as-applied challenges is inapplicable. There is no *per se* bar to considering petitioner's claim now. Further, based on this court's reasoning in *Harris*, petitioner's claim must be rejected.

¶ 56     In *Harris*, the defendant raised the same claim that petitioner raises here, arguing that the reasoning of *Miller* should be extended to adult offenders between the ages of 18 and 21 under both the eighth amendment and the proportionate penalties clause based on recent scientific research on brain development. This court rejected the defendant's eighth amendment argument, noting that the Supreme Court had determined that the traditional line between juveniles and adults was set at age 18 and that scientific studies were not relevant in making this determination. We stated:

> "[T]he line drawn by the Supreme Court at age 18 was not based primarily on scientific research. The Supreme Court acknowledged its line at age 18 was an imprecise 'categorical rule[ ]' but emphasized that 'a line must be drawn.' [*Roper v. Simmons*, 543 U.S. 551, 574 (2005)]. The Court drew the line at age 18 because that 'is the point where society draws the line for many purposes between childhood and adulthood.' *Roper*, 543 U.S. at 574. New research findings do not necessarily alter that traditional line between adults and juveniles." *Harris*, 2018 IL 121932, ¶ 60.

¶ 57     There is no reason why this rationale would not apply with equal force under the proportionate penalties clause. Further, there is a fundamental contradiction here. The majority is remanding the cause to the circuit court to provide petitioner the opportunity to produce scientific evidence regarding brain development, even though this court has already determined that new research findings "do not necessarily alter" the traditional line—18 years of age—between adults and juveniles. The remand, therefore, appears to provide petitioner with nothing more than the opportunity to present irrelevant evidence. This makes little sense.

¶ 58     In my view, in light of this court's reasoning in *Harris*, petitioner's proportionate penalties clause challenge fails. Accordingly, I dissent from the portion of the majority opinion that remands this cause to consider whether petitioner's natural life sentence violates the proportionate penalties clause.

¶ 59     JUSTICE MICHAEL J. BURKE, concurring in part and dissenting in part:

¶ 60     I agree with the majority's decision to remand the cause to the circuit court for further consideration of defendant's postconviction claim of actual innocence.

However, I disagree with the majority's conclusion that the cause must be remanded for second stage postconviction proceedings to consider whether defendant's sentence violates the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11), in accordance with directives from *People v. Harris*, 2018 IL 121932. Accordingly, I concur in part and dissent in part.

¶ 61    I would hold that the appellate court's judgment declaring the statute unconstitutional as applied on proportionate-penalties grounds (based on the notion that the brains of young adults are still undergoing development) should be reversed outright without any remand. I would also hold that the postconviction court's second-stage dismissal of defendant's penalties-clause claim should be affirmed. I do not believe that a remand is required per *Harris*.

¶ 62    At the second stage of a postconviction proceeding, the circuit court determines whether defendant's petition and any accompanying documentation make a substantial showing of a constitutional violation. *People v. Johnson*, 2018 IL 122227, ¶ 15. If the requisite showing is not made, the petition should be dismissed. *Id.*; 725 ILCS 5/122-6 (West 2010). Nonfactual and nonspecific assertions and mere conclusions are insufficient to require a hearing under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2010)). *People v. Brown*, 236 Ill. 2d 175, 205 (2010). Statutes are presumed constitutional, and defendant in this case had to overcome that presumption by clearly showing that the sentencing scheme he challenged was unconstitutional as applied to him. *People v. Coty*, 2020 IL 123972, ¶ 22.

¶ 63    Here, defendant did not cite any evidence in support of his postconviction petition, nor did he even mention the science concerning young adult brain development that he now argues supports his claim. Thus, defendant failed to make the requisite showing and should not be given another bite at the apple. I read *Harris* to say that a direct appeal is not the appropriate forum to raise such an issue but that it should instead be raised in a postconviction proceeding. See *Harris*, 2018 IL 121932, ¶ 48 (on direct appeal, the court declined to remand the matter to the trial court for an evidentiary hearing but noted that defendant's as-applied proportionate penalties clause claim was more appropriately raised in a postconviction

proceeding). Again, defendant had his opportunity to raise the science of brain development before the postconviction court in this case but failed to do so.

¶ 64    But beyond defendant's failure to raise the science of brain development before the postconviction court, I would resolve this case on the basis that, even considering such evidence, the determination of a sentencing line between juveniles and adults for mandatory life sentencing is best set as a matter of policy by the legislative branch.

¶ 65    In that regard, I agree with the point made by Chief Justice Burke in her special concurrence in *Harris*:

> "although scientific studies regarding brain development may help in determining where the line between juveniles and adults should be drawn for purposes of criminal sentencing, the issue is not one that can be resolved with scientific certainty based 'primarily on scientific research.' [Citation.] Rather, determining the age at which human beings should be held fully responsible for their criminal conduct is ultimately a matter of social policy that rests on the community's moral sense. Traditionally, 18 is the age at which the line is drawn between juveniles and adults." *Id.* ¶ 77 (Burke, J., specially concurring).

¶ 66    When enacting the statute under which defendant was sentenced in the present case, the legislature considered both the possibility of rehabilitation and the seriousness of the offense of committing multiple murders and determined that, in the public interest, there must be a mandatory minimum sentence of natural life imprisonment for an adult who commits such crimes. *People v. Taylor*, 102 Ill. 2d 201, 206 (1984). I believe that the legislative judgment itself expresses the moral sense of the community relative to the penalty available for the commission of multiple murders. See *Coty*, 2020 IL 123972, ¶ 43 (The legislative judgment " '*itself* says something about the "general moral ideas of the people." ' " (Emphasis in original.) (quoting *People v. Rizzo*, 2016 IL 118599, ¶ 37, quoting *People v. Miller*, 202 Ill. 2d 328, 339 (2002), quoting *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 421-22 (1894))). The legislature has further clearly determined that this mandatory minimum applies to 19-year-olds. In fact, recent legislative enactments confirm that for the purposes of criminal punishment a person is an adult when he turns 18 years old. In my view, these enactments indicate without a doubt that defendant's mandatory life sentence is a legislative

policy determination, and one which easily passes constitutional muster under the proportionate penalties clause. In 2013, the legislature amended the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2012)) to adjust the age to be considered a juvenile from 17 to 18 but did not go further than that. See *People v. Richardson*, 2015 IL 118255, ¶¶ 1, 3 (comparing 705 ILCS 405/5-120 (2012), with 705 ILCS 405/5-120 (West Supp. 2013)). In 2015, it passed a sentencing provision requiring sentencing courts to consider youth-related mitigating factors for those under 18. See Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105). And most telling, in 2019, it provided parole review for certain crimes committed by those under 21 but excluded parole review for those like defendant who were subject to mandatory life sentences. See Pub. Act 100-1182, § 5 (eff. June 1, 2019) (adding 730 ILCS 5/5-4.5-115).

¶ 67    I would further find that, while the courts have the ultimate responsibility to determine what is a constitutional sentence, nothing in this case rebuts the high standard of constitutionality enjoyed by the legislative determination.

¶ 68    Defendant asserted that his sentence should be declared invalid as applied to him because of his age and minimal involvement in the commission of the crimes. This argument should be soundly rejected.

¶ 69    For defendant's argument to succeed, he would have to satisfy the " 'cruel and degrading' " standard. See *Rizzo*, 2016 IL 118599, ¶ 28. This standard would require him to establish that the challenged penalty is " 'so wholly disproportionate to the offense committed as to shock the moral sense of the community.' " *Coty*, 2020 IL 123972, ¶ 31 (quoting *People v. Huddleston*, 212 Ill. 2d 107, 130 (2004)). This court has never found a mandatory prison term cruel and degrading, or a shock to the moral sense of the community, when applied to an adult homicide offender. Moreover, the parties acknowledge that this court has found the maximum penalty for murder cruel and degrading just one time but that it was in respect to a 15-year-old juvenile with a minimal degree of participation in the crime, who had less than one minute to contemplate his decision to act as a lookout. See *Miller*, 202 Ill. 2d at 340.

¶ 70    Here, in contrast to *Miller*, defendant was a 19-year-old adult and had a motive to promote commission of the offenses. He distributed cocaine for the gang to which he belonged for most of his life, and the purpose of the murder-kidnapping

plot was to preserve his gang's drug territory. In furtherance of that objective, he held the victims at gunpoint to facilitate the kidnapping, knew the victims in fact were going to be harmed, acted as a decoy, then threatened a witness with violence after the offenses.

¶ 71 All the cases defendant cites in support of his argument apply to juveniles. See, *e.g.*, *Roper v. Simmons*, 543 U.S. 551 (2005); *Graham v. Florida*, 560 U.S. 48 (2010); *Miller v. Alabama*, 567 U.S. 460 (2012). He cites no cases applying his argument to adults. Indeed, there is a paucity of authority nationwide holding that a young adult offender could ever be exempted from a mandatory life without parole sentencing scheme based on a proportionate-penalties argument. See *In re Monschke*, 482 P.3d 276, 289 (Wash. 2021) (Owen, J., dissenting, joined by Johnson, Madsen, and Stephens, JJ.) ("no legislatures or courts in the other 49 states have ever recognized such a protection").

¶ 72 For the above reasons, I dissent from the portion of the majority's judgment that remands the cause to the circuit court for consideration of defendant's proportionate penalties clause claim. Instead, I would find that defendant's sentence does not violate this clause of our state constitution.

¶ 73 JUSTICE OVERSTREET joins in this partial concurrence, partial dissent.