**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190656-U

Order filed June 2, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0656 Circuit No. 13-CF-100 |
| BETHANY L. McKEE, | ) ) ) | Honorable Sarah-Marie F. Jones, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Daugherity and McDade concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The circuit court erred when it summarily dismissed defendant's postconviction petition.

¶ 2     Defendant, Bethany L. McKee, appeals from the Will County circuit court's summary dismissal of her postconviction petition. Defendant argues the court erroneously dismissed her petition because it presented the gist of claims of ineffective assistance of trial and appellate counsel. We reverse and remand for second-stage proceedings.

¶ 3                                    I. BACKGROUND

¶ 4          On April 25, 2013, the State charged defendant and codefendants, Adam Landerman, Alisa Massaro, and Joshua Miner, by superseding indictment with six counts of first degree murder (720 ILCS 5/9-1(a)(1) (West 2012)) related to the deaths of Eric Glover and Terrance Rankins. The matter proceeded to a bench trial.

¶ 5          The evidence adduced at trial showed that on January 9, 2013, defendant lived at Massaro's residence. That evening, Miner and Landerman were also at the residence. The group discussed how to obtain money for alcohol and cigarettes. Rankins had contacted defendant to hang out with him and Glover. Defendant told the others that she knew Rankins always carried a large amount of cash, and they began planning to rob Rankins and Glover. Miner offered to beat up, kill, and steal from Rankins and Glover. Landerman agreed to help. The group established a signal to indicate when Massaro and defendant should leave the room so Miner and Landerman could execute the plan. Defendant invited Rankins and Glover to the residence. Defendant went along with the plan but did not believe that anything would happen.

¶ 6          When Rankins and Glover arrived, they drank alcohol and played video games with the group. Later, when Miner gave the signal, defendant and Massaro left the room. When the noise emanating from that room became louder, Massaro went to tell Miner and Landerman to quiet down and found the door locked. Massaro heard Miner say, "die, die." Defendant and Massaro left the residence. When they returned, Rankins and Glover were found dead in the room.

¶ 7          Miner gave defendant money recovered from Rankins's and Glover's bodies. Defendant purchased gas with the money. Defendant also searched Glover's vehicle and took several items. With the remaining money, the group purchased cigarettes and cocaine. When they returned to the

residence, they used the cocaine and battered Rankins's and Glover's bodies by kicking and hitting them with an empty liquor bottle.

¶ 8          The following day, the group discussed how to dispose of the bodies. Defendant suggested they contact her father, and the group agreed. Defendant's father called the police to report the deaths. At the scene, officers initially spoke with Massaro and later located Miner and Landerman hiding in the residence. The police also discovered the bodies of Glover and Rankins. Miner informed the police that he and Landerman had killed Rankins and Glover.

¶ 9          The court found defendant guilty of the first degree murders of Rankins and Glover under an accountability theory.

¶ 10          On November 4, 2014, a sentencing hearing revealed that defendant was 18 years old at the time of the offense. She had been sexually assaulted when she was 14 years old, and the perpetrator had cut her face and chest with a knife over 200 times. Also, when defendant was 14 years old, she went missing for two weeks. It was later revealed that defendant had been forced into prostitution, drugged, and beaten. Defendant suffered from depression, bipolar disorder, attention deficit hyperactivity disorder, posttraumatic stress disorder, and had a history of self-mutilation. Defendant had been hospitalized nine times for her mental health issues and took medication that had been ineffective in treating her issues.

¶ 11          Trial counsel argued that defendant's mandatory life sentence was unconstitutional as applied to defendant due to her being only an accomplice. Counsel did not argue the emerging science regarding the brain development of young adults and how that science would apply to defendant's particular circumstances. The court noted that the mandatory life sentence under the accomplice theory was problematic but that it did not have discretion regarding defendant's sentence. The court sentenced defendant to life imprisonment. Defendant appealed.

3

¶ 12    On appeal, we affirmed defendant's sentence, finding that it was constitutional as applied to young adult accomplices. *People v. McKee*, 2017 IL App (3d) 140881, ¶ 38. Specifically, we found that defendant's case was factually distinguishable from *People v. House*, 2015 IL App (1st) 110580, in that defendant actively participated in the planning of the murder and disposal of the bodies. *McKee*, 2017 IL App (3d) 140881, ¶ 29. We further found that defendant failed to present any evidence regarding the science of juvenile development as it applied to her particular circumstances, which left the question of whether her experiences and diagnoses affected her maturity at the time of the offense. *Id.* ¶¶ 34-35. Ultimately, we concluded that defendant's sentence did not "shock the moral conscience of the community," and thus, was constitutional. *Id.* ¶ 36.

¶ 13    Defendant filed the present postconviction petition as a self-represented litigant alleging, *inter alia*, trial counsel was ineffective for failing to investigate and present (1) evidence at sentencing of defendant's autism spectrum disorder, psychological capacity, severe trauma, and the combined effects on defendant's development as an emerging adult to support defendant's as-applied constitutional challenge, and (2) defendant's autism spectrum disorder and psychological capacity at trial to contest the intent element of first degree murder. Defendant also alleged the ineffective assistance of appellate counsel for failing to raise disparate sentence and sufficiency of the evidence challenges on appeal. In the petition, defendant presented evidence of her mental health evaluation showing that she had been diagnosed with an autism spectrum disorder that would have been present throughout defendant's life and affected her ability to understand and participate in social situations. Specifically, the autism spectrum disorder would have caused defendant to have difficulty processing language and have spontaneous social responses, be

4

socially naïve, mimic other individuals' characteristics and mannerisms, and be easily manipulated. The court summarily dismissed the petition. Defendant appeals.

¶ 14                                             II. ANALYSIS

¶ 15        Defendant argues that the circuit court erroneously dismissed her postconviction petition because it presented the gist of a constitutional claim for ineffective assistance of trial and appellate counsel.

¶ 16        The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a process for a criminal defendant to assert that his conviction resulted from a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). At the first stage, defendant need only state the "gist" of a constitutional claim. *Id.* The first stage of postconviction proceedings "presents a 'low threshold' [citation], requiring only that the petitioner plead sufficient facts to assert an arguably constitutional claim." *People v. Brown*, 236 Ill. 2d 175, 184 (2010) (quoting *People v. Jones*, 211 Ill. 2d 140, 144 (2004)). "A petitioner need present only a limited amount of detail and is not required to include legal argument or citation to legal authority." *Id.* The circuit court may summarily dismiss the petition at the first stage of proceedings if it is frivolous or patently without merit, such that it "has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 16. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* When defendants act as self-represented litigants, "courts should review their petitions 'with a lenient eye, allowing borderline cases to proceed.' " *Id.* at 21 (quoting *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983)).

¶ 17      To warrant second-stage proceedings, defendant's petition must show that "(i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.* at 17.

¶ 18      In the present case, defendant's petition made an arguable showing of deficient performance and prejudice. Regarding deficient performance, at the time of defendant's sentencing hearing, trial counsel had a record of defendant's age and her social and psychological history. Given this history and the facts of this case, counsel arguably should have further investigated defendant's mental health and further presented these issues to the court during the sentencing hearing. Nevertheless, trial counsel did not do so. Trial counsel also did not mount a constitutional challenge to defendant's life sentence based on defendant's young age, minimal participation in the offense, and diminished mental capacity, similar to *People v. Thompson*, 2014 IL App (1st) 121729-U, ¶ 12 and *People v. Miller*, 202 Ill. 2d 328, 340-43 (2002).

¶ 19      Regarding prejudice, as illustrated by our supreme court's recent decision in *People v. House*, 2021 IL 125124, ¶ 31 (finding that a determination on whether defendant's natural life sentence violated the proportionate penalties clause was inappropriate without a developed record or factual findings on an as-applied constitutional challenge at the circuit court), a challenge to defendant's life sentence on the ground that her young age and intellectual issues would warrant further investigation and could have changed the outcome of defendant's as-applied challenge to her sentence.

¶ 20      The State argues defendant's claim is barred by *res judicata* because defendant raised a similar claim on direct appeal. However, on direct appeal, we made no ruling on defendant's as-applied constitutional challenge that argued the court should have considered her juvenile brain development at sentencing. *McKee*, 2017 IL App (3d) 140881, ¶ 34; see, *e.g.*, *People v. Davis*,

6

2014 IL 115595, ¶ 13 ("issues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*"). Even if there had been a ruling, defendant's present ineffective assistance of trial counsel claim is sufficiently distinguishable from her as-applied constitutional challenge presented in *McKee*, 2017 IL App (3d) 140881, ¶¶ 24, 30, as it relies on facts that were not apparent in the record on direct appeal. See *People v. Barrow*, 195 Ill. 2d 506, 528 (2001) ("This court will relax the doctrine of *res judicata* when the evidence relating to the claim does not appear on the face of the original appellate record."); see also *People v. West*, 187 Ill. 2d 418, 427 (1999) ("default may not preclude an ineffective-assistance claim for what trial counsel allegedly ought to have done in presenting a defense"). To the extent that the State argues this issue was forfeited, we note that defendant's claim relies on new evidence that could not necessarily have been brought forth on direct appeal See, *e.g.*, *House*, 2021 IL 125124, ¶¶ 22, 31; see also *People v. Veach*, 2017 IL 120649, ¶ 47 (Forfeiture does not "preclude a defendant from raising an issue on collateral review that depended upon facts not found in the record"). Therefore, postconviction proceedings are more appropriate than direct appeal when resolving an ineffective assistance of counsel claim that has an insufficient or inadequate record on appeal, as is presented in this case. See *Veach*, 2017 IL 120649, ¶ 46.

¶ 21 Accordingly, we find that defendant's petition meets the low first-stage threshold as it presents an arguable claim of ineffective assistance of counsel. We take no position on whether an actual constitutional violation occurred as defendant need only present the gist of a claim at the first stage. We need not address defendant's remaining two postconviction claims, as her first claim warrants further proceedings and partial dismissals are not permitted at the first stage. See *People v. Rivera*, 198 Ill. 2d 364, 374 (2001).

¶ 22                                 III. CONCLUSION

7

¶ 23  The judgment of the circuit court of Will County is reversed and remanded for second-stage postconviction proceedings.

¶ 24  Reversed and remanded with directions.