NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241522-U

NO. 4-24-1522

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 12, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| SHAUNTA D. EASTON, | ) | No. 19CF391 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Paul P. Gilfillan, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Harris and Justice Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment, concluding no meritorious issue could be raised on appeal.

¶ 2    In 2020, a jury found defendant, Shaunta D. Easton, guilty of unlawful possession with intent to deliver more than 900 grams of cocaine (720 ILCS 570/401(a)(2)(D) (West 2018)). Defendant's conviction and sentence were affirmed on direct appeal. *People v. Easton*, 2022 IL App (3d) 210093-U, ¶ 2. Defendant filed a postconviction petition, alleging that she was denied effective assistance of counsel. Following a third-stage evidentiary hearing, the trial court denied defendant's postconviction petition. Defendant appealed, and counsel was appointed to represent her. Counsel now seeks to withdraw, contending any argument would be meritless. For the reasons that follow, we grant counsel's motion and affirm the trial court's judgment.

¶ 3                                        I. BACKGROUND

¶ 4                              A. Charges and Pretrial Proceedings

¶ 5              On June 26, 2019, defendant was arrested and charged by information with one count of unlawful possession with intent to deliver more than 100 grams of cocaine (720 ILCS 570/401(a)(2)(B) (West 2018)). The following day, defendant appeared in court and indicated that she was represented by Kevin Sullivan.

¶ 6              On July 2, 2019, defendant was charged by superseding indictment with two counts. Count I alleged unlawful possession with intent to deliver more than 900 grams of cocaine (720 ILCS 570/401(a)(2)(D) (West 2018)), a Class X felony. Count II alleged unlawful possession of more than 900 grams of cocaine (720 ILCS 570/402(a)(2)(D) (West 2018)), a Class 1 felony.

¶ 7              On July 25, 2019, defendant appeared at her arraignment with Bruce Cowan, who filed an appearance as her counsel. At that time, the trial court informed defendant as follows:

              "The Grand Jury of Peoria County *** has returned a two-count bill of indictment against you. One is for the Class X felony [of] unlawful possession with intent [to] deliver a controlled substance[,] cocaine. The second is for the Class 1 felony of unlawful possession of a controlled substance."

The court indicated that it handed a copy of the bill of indictment to Cowan, who "[w]aive[d] formal reading and enter[ed] a plea of not guilty." Cowan represented defendant until February 10, 2020.

¶ 8              On February 10, 2020, Sullivan filed an appearance as defendant's counsel. On June 18, 2020, defendant appeared in court with Sullivan. At that time, Sullivan indicated that he believed defendant and the State had reached a "partially negotiated plea" but wanted defendant to have more time to consider the State's offer. When the parties appeared in court a week later, on June 25, 2020, Sullivan informed the trial court that the State and defendant had not yet reached

a plea agreement. When the court suggested that defendant didn't "like" the State's offer, defendant responded: "I just don't like the fact that—I'm just not willing to give up my life just because I love somebody." Sullivan noted that defendant's boyfriend and codefendant, Jason Malone, had recently pleaded guilty and was sentenced to 23 years in prison. On that same day, Sullivan filed a motion to withdraw as defendant's counsel.

¶ 9　　　　Defendant appeared in court again on July 6, 2020. On that date, Sullivan explained to the trial court that he was moving to withdraw because defendant was "not happy with the advice" he had given her and had already hired a new attorney, John Lonergan. When the court questioned defendant about why she wanted a new attorney, defendant said, in part, that Sullivan told her that "the best thing for [her] to do is take the plea." Defendant explained: "I don't want to take a plea because I'm not guilty. So I don't want a plea. I'm going to fight and see however it's going to come out." Thereafter, Sullivan explained the following to the court:

> "When I took this case on, [defendant] was facing a Super Class X felony, sentencing range 15 years on the low end, 60 years on the high end, any sentence would have been served at 75 percent under the Truth-in-Sentencing Act. The State had an offer on the table similar to the co-defendant of a cap of 30 years. It then would have been 15 to 30 years at 75 percent.
>
> Very shortly before the last scheduling conference, I received an offer from the State that was far better, and it would have been much better for her. It would have been a lesser class offense, it would have been day-for-day credit eligible ***[.]
>
> ***
>
> It would have been an open plea for a regular Class X, six to 30 at 50

percent."

Thereafter, the court, prosecutor, and Sullivan discussed the charges against defendant. Sullivan confirmed that defendant was charged with two counts, a "Super X" and "a possession." The prosecutor clarified that "[c]ount 2" was "[a] Class 1 [felony] and the minimum sentence on the Class 1 because of quantity is 10, maximum 50." The prosecutor then stated that the sentence on "[c]ount 1 is 15 to 60 at 75 percent" because it is a "Super X." She stated that the sentence of "10 to 50" for "[c]ount 2" is "day-for-day."

¶ 10        After more discussion, the trial court stated as follows:

"The Defendant in this case is charged with one Class X felony, however, we call it a Super X because based on the charge and the quantity, upon conviction, a defendant that would be convicted of that Class X felony would have a sentencing range available to them that would be non-probationable and the lowest sentence they could receive would be 15 years in the Department of Corrections or up to 60 years and served at the 75 percent range.

Count 2 *** is a Class 1 felony but is sentenced in some other peculiar fashion because of the quantity, whereby if convicted the Defendant would—a defendant would receive a prison sentence, non-probationable, of no less than 10 years, it could be up to 50 years, and that would be served at a day-for-day rate. And those are the two counts."

Defendant was present for the entirety of the hearing. The court granted Sullivan's motion to withdraw. On the same day, Lonergan entered his appearance as defendant's counsel.

¶ 11                    B. Trial and Conviction

¶ 12        Before defendant's trial began on October 19, 2020, the trial court stated that

defendant has "been charged with two counts by bill of indictment on a Class X felony." The court then read the charges for both counts. Thereafter, the court asked if there had been any offers by the State. Lonergan indicated: "We received a new offer this morning which I discussed with my client and she declined that as well." After that, the court and the parties discussed the sentencing range for each of defendant's charges. The prosecutor stated: "The sentencing range for [c]ount 1 is 15 years minimum up to 60 years in the Department of Corrections. It is not probationable. It must be served at 75 percent per Truth in Sentencing." The prosecutor stated that the sentence for count II was 10 to 50 years and was "eligible for day-for-day credit" and "probationable." The following exchange then took place between the court and defendant:

"THE COURT: *** You understand that is the potential sentence in each of those counts, [defendant], correct?

THE DEFENDANT: Yeah. I didn't know there was two different charges. I didn't know that.

THE COURT: Not only did you know that I read it to you before and I gave the same examples because I wrote in my notes here that there are two counts. In fact, you were handed them.

THE DEFENDANT: Sir, I didn't know that. I know you're saying I do, but I'm tellin' you I didn't.

THE COURT: I'm telling you I know I informed you."

¶ 13        Defendant's trial proceeded for two days. In closing arguments, defense counsel asserted that defendant "dated a drug dealer, an admitted drug dealer who pled guilty" but that defendant was not guilty of "being a drug dealer" herself. On October 20, 2020, the jury found defendant guilty of count I, unlawful possession with intent to deliver a controlled substance.

Defendant filed a motion for a new trial or judgment notwithstanding the verdict, arguing that the evidence was insufficient to prove her guilty beyond a reasonable doubt. The trial court denied the motion.

¶ 14                      C. Sentencing

¶ 15         On December 4, 2020, the trial court held a sentencing hearing. According to the presentence investigation report, defendant was "very upset and feels like she is going to jail because she is 'the drug dealer's girlfriend.' " The trial court sentenced defendant to 17 years in prison, of which defendant must serve 75%.

¶ 16                      D. Direct Appeal

¶ 17         On direct appeal, defendant argued that (1) the State presented insufficient evidence to sustain her conviction and (2) her sentence was excessive. The appellate court affirmed defendant's conviction and sentence. *Easton*, 2022 IL App (3d) 210093-U, ¶ 2.

¶ 18             E. Postconviction Petition and Proceedings

¶ 19         On December 5, 2022, defendant filed a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)), alleging ineffective assistance of counsel. Specifically, defendant alleged that her counsel failed to (1) make her "aware that the [State's] offer was based on a sentence to be served at 50% with a statutory minimum of six (6) years, whereas the count she was taking to trial was based on a sentence of 75% with a statutory minimum of fifteen (15) years" and (2) ask the trial court to admonish defendant after she rejected the State's plea offer. Attached to the petition was an affidavit from defendant, which stated as follows:

> "1. I received an offer from the state to plead guilty to count 2 of the indictment prior to going to trial on October 19, 2020.

2. Prior to October 19, 2020, my trial lawyer never explained to me that there were two different counts, and I did not know that there were two counts.

3. I rejected the offer. When I rejected the offer, I did not know that the offer I received was for a lower-level felony that had a statutory minimum sentence that was nearly three times lower than count 1.

4. My trial lawyer never explained the difference in sentencing penalties between the two counts and consequences of rejecting the offer."

¶ 20 On June 28, 2024, because the petition had been pending for more than 90 days (725 ILCS 5/122-2.1(a), (b) (West 2022)), the trial court advanced the petition to the second stage of postconviction proceedings. On July 3, 2024, the State filed a motion to dismiss. On September 27, 2024, the court denied the State's motion and scheduled a third-stage evidentiary hearing.

¶ 21 On November 26, 2024, the trial court held a third-stage hearing on defendant's postconviction petition. At that hearing, Lonergan testified that he remembered the State renewed a plea offer on the morning of defendant's trial. Lonergan believed the State's offer was to dismiss the Super X charge in exchange for an open plea on the remaining charge, which had a sentencing range of 6 to 30 years. Lonergan said defendant rejected that offer.

¶ 22 Lonergan testified that when he first met defendant, he wrote down what she told him on an "intake sheet." The trial court admitted that document into evidence, over defendant's objection. On the intake sheet, Lonergan noted that defendant was charged with a "Super X" offense, with a prison sentence of "15 yrs minimum." On that document, Lonergan also wrote that the State offered to "drop to Class X," with a sentence of "6-30 yrs."

¶ 23 Lonergan testified that when he took over defendant's case from Sullivan, he found a letter in the file that Sullivan wrote to defendant, dated June 26, 2020. That letter was admitted

into evidence, over defendant's objection. In that letter, Sullivan wrote, in part, as follows:

"If you are found guilty of Count 1 as it is presently charged, which is colloquially known as a Super Class X offense, you will be sentenced to the Illinois Department of Corrections (IDOC) for [at] least fifteen (15) but possibly up to sixty (60) years. You will have to serve at least seventy five percent (75%) of any such sentence.

When I assumed responsibility for representing you and took over for Attorney Bruce Cowan, the prosecutor indicated that his offer to resolve your case included a plea [of] guilty to Count 1, but the sentence would [be] limited to thirty (30) years, *i.e.*, you would face a sentence from fifteen (15) to thirty (30) years, rather than up to sixty (60) years. That offer would have still resulted in you having to serve at least seventy five percent (75%) of that sentence if the offense involved one hundred (100) of [*sic*] more grams of a controlled substance. ***

On June 18th, 2020, the prosecutor conveyed an offer to allow you to plead guilty to a lesser quantity of controlled substances, less than 100 grams. Possessing with intent to distribute at least fifteen (15) grams of cocaine qualifies as a Class X offense. The prosecutor agreed to allow you to plead guilty to approximately forty one (41) grams of cocaine which was found in the 2002 Chevy Express Van owned by and registered to you. The sentence for this offense would carry from six (6) years to thirty (30) years in the IDOC; however, you would [be] entitled to good conduct of fifty percent (50%), *i.e.*, day-for-day credit. If you chose this option, it would significantly reduce your exposure to an otherwise a [*sic*] long sentence.

You requested that I communicate with the prosecutor and determine if he would agree to yet a lesser charge, *e.g.*, possession of less than one hundred (100) grams of a controlled substance, a Class 1 offense. *** As you know, I spoke with the prosecutor on Thursday afternoon after the conclusion of his jury trial. He declined our counteroffer for you to plead to a lesser charge. He advised he believed he already made a significant concession by agreeing to dismiss the Super Class X offense.

You have now informed me that you will be hiring a new attorney and have rejected all offers in your case. I expect the prosecutor will withdraw all of the offers made, which he is entitled to do. Therefore, the sentencing parameters will revert to the statutory mandatory minimum (fifteen (15) years) and the Ms. [*sic*] maximum (sixty (60) years), with only the possibility of twenty-five percent (25%) good time credit."

¶ 24 Lonergan testified that he has worked as a criminal defense attorney since 1997, handled thousands of cases, and represented "several hundred" clients charged with Super X drug offenses. Lonergan testified that he explained to defendant prior to trial that she was charged with two different counts and that one had a harsher sentencing range than the other. Lonergan also testified that he explained to defendant that the State's offer was for a charge with a lower sentencing minimum of 6 years, instead of 15 years for the Super X charge. Lonergan did not "have a specific recollection" of explaining to defendant that she would serve a lower percentage of the sentence if she pleaded guilty but said it was his practice to do so because his clients want to know how much time they will "actually have to serve." Lonergan believed he followed his "normal practice" in defendant's case.

¶ 25    Defendant testified that she spoke to Lonergan on the morning her trial was scheduled to begin. At that time, Lonergan informed her that the State was offering her "6 to 30 at 50 percent." Defendant said that Lonergan did not explain that the State's offer entailed dismissing count I, the Super X charge, nor did Lonergan explain the difference between a "Super X" and a "regular X" offense. Defendant testified that she rejected the State's offer because she thought the State "should have put a cap on it" because it was her "first time getting in trouble." She testified that she would not have rejected the offer if she had known "that Count 1 carried a sentence of 75 percent as opposed to Count 2 carrying a sentence of 50 percent."

¶ 26    Defendant denied receiving the letter from Sullivan that was admitted into evidence at the hearing. She admitted that she lived at the address that Sullivan mailed the letter to but said she was not at that address in June or early July 2020 because she "moved to Florida after [her] court date in June." She agreed that she still owned the property where the letter was sent after June 2020 and returned to that property before her trial in October 2020 but denied ever seeing or reading Sullivan's letter. She testified that she would have accepted the plea deal if she had read the letter.

¶ 27    The State recalled Lonergan. He testified that "from early on it was clear that [defendant] wanted a trial." He said, "She was not going to plead guilty." Defendant told Lonergan that "she had nothing to do with" the crimes she was charged with but that "her boyfriend" was "responsible, and he'd already pled guilty and been convicted." Lonergan stated: "I know we had the conversation at some point during my representation about the percentages and so forth." He said those were "very brief conversations because [defendant] wasn't interested in working out a deal or doing—I guess I should say she didn't want to do any time." According to Lonergan, "[Defendant] was adamant of not doing time and the only way to do that was to go to trial."

¶ 28    At the conclusion of the hearing, the trial court denied defendant's petition, relying on six "factor[s]": (1) Lonergan's intake form, which made "a distinction between Super X and X," from which the court inferred that if defendant "knew *** the difference between a Super X and an X, she knew not just the difference in sentencing ranges but also the percentages, too"; (2) Sullivan's letter, which was "sent to [defendant] at her current then-known address by her own attorney at the time," that "fully details the differences between Super X and X"; (3) defendant's own statements at the hearing that the State offered her 6 to 30 years at 50% but that the State made no mention of dismissing the Super X, which the court found would be "counterintuitive" and "doesn't make sense"; (4) Lonergan's "credible" testimony that it is his practice to discuss sentencing percentages with clients; (5) Lonergan's testimony that defendant was "adamant" about going to trial, supporting the "State's position that it wouldn't have mattered if the percentages were mentioned or not"; and (6) the comments of record on the day of the trial about an offer from the State that defendant rejected.

¶ 29    This appeal followed.

¶ 30                                   II. ANALYSIS

¶ 31    On appeal, counsel moves for leave to withdraw. Counsel supports her motion with a memorandum stating she considered raising the following issues on defendant's behalf: (1) the trial court manifestly erred in denying her postconviction claim of ineffective assistance of counsel and (2) her counsel was ineffective for failing to ask the trial court to give defendant admonishments after she rejected the State's plea offer. Counsel explained why she concluded that neither of these issues has arguable merit. We agree with counsel that no meritorious issue can be raised on appeal.

¶ 32		The Act "provides a tool for criminal defendants to assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. House*, 2021 IL 125124, ¶ 15. There are three stages of postconviction proceedings. At the first stage, the court reviews the petition independently to "determine whether it is 'frivolous or is patently without merit.' " *House*, 2021 IL 125124, ¶ 16 (quoting 725 ILCS 5/122-2.1(a)(2) (West 2008)). If the court does not summarily dismiss the petition, the matter proceeds to the second stage. *House*, 2021 IL 125124, ¶ 16. At the second stage, the court may appoint counsel for the petitioner, and the State may file a responsive pleading. *House*, 2021 IL 125124, ¶ 17. If the defendant makes a substantial showing of a constitutional violation at the second stage, the matter proceeds to a third-stage evidentiary hearing, where fact-finding and credibility determinations may be involved. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). At the third stage, "the defendant bears the burden of making a substantial showing of a constitutional violation." *Pendleton*, 223 Ill. 2d at 473. Where a trial court's decision to deny a postconviction petition after a third-stage hearing is based on disputed issues of fact that require credibility determinations, we will reverse that decision only if it is manifestly erroneous. *Pendleton*, 223 Ill. 2d at 473. "Manifestly erroneous means arbitrary, unreasonable and not based on the evidence." *People v. Wells*, 182 Ill. 2d 471, 481 (1998).

¶ 33		To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To establish prejudice, the defendant must show there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. *Strickland*, 466

U.S. at 694. The failure to satisfy either the deficiency prong or the prejudice prong precludes a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 700.

¶ 34 Defendants have a "sixth amendment right to the effective assistance of counsel during guilty-plea negotiations." *People v. Williams*, 2016 IL App (4th) 140502, ¶ 19 (citing *People v. Curry*, 178 Ill. 2d 509, 528 (1997), *abrogation on other grounds recognized by People v. Hale*, 2013 IL 113140, ¶ 20 (1997)). " 'A criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer.' " (Emphasis in original.) *Williams*, 2016 IL App (4th) 140502, ¶ 19 (quoting *Curry*, 178 Ill. 2d at 528). " 'Concomitantly, a criminal defense attorney has the obligation to inform his or her client about the maximum and minimum sentences that can be imposed for the offenses with which the defendant is charged.' " *People v. Barghouti*, 2013 IL App (1st) 112373, ¶ 17 (quoting *Curry*, 178 Ill. 2d at 528). Counsel's erroneous advice about the percentage of a sentence the defendant must serve can constitute deficient performance and satisfy the first prong of *Strickland*. See *People v. Brown*, 2017 IL 121681, ¶ 27.

¶ 35 A. Denial of the Postconviction Petition

¶ 36 The first issue appellate counsel considered arguing on appeal was that the trial court manifestly erred in denying defendant's claim of ineffective assistance of counsel. In her postconviction petition, defendant alleged that her counsel was ineffective because he never (1) advised her that she was charged with two offenses or (2) explained the difference in sentencing penalties for the offenses. However, as the trial court found following the evidentiary hearing, defendant's contentions were contradicted by the record and the evidence.

¶ 37 The record establishes that defendant was informed long before her trial in October 2020 that she faced two charges with different sentencing penalties. On July 25, 2019,

approximately one month after her arrest, the trial court notified defendant at her arraignment that she was charged with two offenses: a "Class X felony [of] unlawful possession with intent [to] deliver a controlled substance[,] cocaine" and a "Class 1 felony of unlawful possession of a controlled substance." The court then handed the indictment containing the two offenses to Cowan, defendant's counsel at the time. Almost a year later, on July 6, 2020, Sullivan, the State, and the court discussed the charges against defendant. As part of that discussion, Sullivan, the State, and the court each mentioned the minimum and maximum sentences for both charges, as well as the fact that defendant would have to serve 75% of her sentence on count I but only 50% of her sentence on count II. Additionally, at the hearing on July 6, 2020, Sullivan specifically outlined the State's most recent plea offer and how it compared to the sentence defendant would face if she went to trial. Sullivan stated that defendant "was facing a Super Class X felony, sentencing range 15 years on the low end, 60 years on the high end, any sentence would have been served at 75 percent" but that he "received an offer from the State that was far better" for defendant because it was for "a lesser class offense" and was "day-for-day credit eligible." That offer was for "an open plea for a regular Class X, six to 30 [years] at 50 percent." Based on the statements made in court in defendant's presence, defendant was adequately informed of the charges against her and the potential sentences she faced if she pleaded guilty or went to trial, refuting the allegations in her postconviction petition.

¶ 38       Furthermore, the documentary evidence and testimony presented at the third-stage hearing contradicted defendant's contentions that she did not know she was charged with two offenses or that the two offenses carried different penalties. First, Sullivan's letter clearly set out not only the charges against defendant, but also the sentences she faced with respect to each charge, including the percentages of the sentences she would be required to serve. While defendant

claimed she never saw or read that letter, the trial court was free to reject defendant's testimony, especially since defendant's presence at the court hearing on July 6, 2020, cast doubt on her claim that she moved to Florida in June 2020. Additionally, the contents of Sullivan's letter made it clear that defendant understood the charges against her and the penalties she faced because defendant asked Sullivan to make a counteroffer to the State, seeking a reduction in the level of the offense. Furthermore, at the hearing, Lonergan testified that while he represented defendant, he had a conversation with defendant about the charges against her, which included "percentages." Lonergan's intake form also established that defendant knew she was charged with a "Super X" offense that carried a 15-year minimum. Those facts refute defendant's contention in her postconviction affidavit that she did not know the plea was for a "lower-level felony that had a statutory minimum sentence that was nearly three times lower than count 1." Finally, defendant testified at the hearing that the State's offer required her to plead guilty to a Class X offense with a sentencing range of 6 to 30 years, to be served at 50%. For all these reasons, the evidence at the hearing established that defendant was adequately informed of the charges and penalties she faced, and, nevertheless, she rejected the State's plea offer.

¶ 39        Because the record refutes defendant's contention that her counsel failed to adequately inform her of the charges against her and the penalties she faced, defendant could not establish the first prong of her ineffective-assistance claim. See *Brown*, 2017 IL 121681, ¶ 27. Thus, the court's denial of defendant's postconviction petition was proper and not manifestly erroneous. We agree with appellate counsel that any arguments to the contrary would lack arguable merit.

¶ 40                    B. Admonishments

¶ 41 Appellate counsel also stated that she considered arguing that defendant's counsel was ineffective for failing to ask the trial court to admonish her about the consequences of rejecting the State's plea offer. However, appellate counsel concluded, and we agree, that such admonishments were not necessary. Thus, defense counsel's failure to request such admonishments was not deficient performance.

¶ 42 Illinois Supreme Court Rule 402(a)(1)-(2) (eff. July 1, 2012) provides that a "court shall not accept a plea of guilty" without informing the defendant of "the nature of the charge" and "the minimum and maximum sentence prescribed by law." "However, the trial court is under no duty to inform the defendant [pursuant to Rule 402] if he has not pled guilty." *People v. Harvey*, 366 Ill. App. 3d 910, 918 (2006) (citing *People v. Jones*, 174 Ill. App. 3d 794, 798 (1988)).

¶ 43 Here, defendant rejected the State's offer and did not plead guilty. Therefore, the trial court was under no duty to provide Rule 402 admonishments to defendant (see *Harvey*, 366 Ill. App. 3d at 918; *Jones*, 174 Ill. App. 3d at 798), and defense counsel was not ineffective for failing to request such admonishments. Thus, we agree with appellate counsel that any argument to the contrary would lack arguable merit.

¶ 44                                III. CONCLUSION

¶ 45 For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 46 Affirmed.